

1334 Parkview Avenue, Suite 280 Manhattan Beach, California 90266
www.BlakelyLawGroup.com T 310-546-7400 F 310-546-7401

E-mail cchan@blakelylawgroup.com

November 19, 2014

**VIA ECF**

Attn:  Hon. Otis D. Wright II
United States District Court - Central District of California
312 N. Spring Street, Courtroom 11
Los Angeles, California 90012

## NOTICE OF DISCOVERY DISPUTE

Re:   Deckers Outdoor Corporation v. Sears Holding Corporation, et al.
      Case No. CV 14-02561-ODW (CWx)

**TO THE COURT, ALL PARTIES, and THEIR COUNSEL OF RECORD:**

Plaintiff Deckers Outdoor Corporation ("Deckers"), in accordance with this Court's July 7, 2014 Order re Consolidation [Docket #29], hereby submits its opening letter brief regarding the adequacy of Defendants Sears Holding Corporation, Sears Brands, LLC, and Sears, Roebuck, and Co. (collectively "Sears") responses to Deckers' First Set of Requests for Production and Special Interrogatories and failure to produce documents.

**A.      Statement of Relevant Facts**

Deckers filed the present lawsuit against Sears on April 4, 2014 in which it alleged trade dress infringement, patent infringement, and related claims based upon Sears' sale of knock-off UGG boots that Deckers has alleged infringe upon its "Bailey Button Boot Trade Dress" and "Bailey Button Design Patents" (U.S. Patent Nos. D599,999 and D616,189).



| Deckers' UGG Bailey Button Boot | Sears' Knock-Off Boots |
|---|---|

Following the parties Rule 26(f) Conference, Deckers sent its First Set of Requests for Production (Exhibit 1) and Special Interrogatories (Exhibit 2) to Sears on August 29, 2014.  On October 2, 2014, Sears served Deckers with responses to Deckers First Set of Requests for Production (Exhibit 3) and Special Interrogatories (Exhibit 4).  Sears' responses consisted of numerous boilerplate objections with no foundation.  Furthermore, *Sears did not produce a single document in response to Deckers' discovery requests*.

November 19, 2014
Page 2

On October 7, 2014, Deckers' counsel sent a letter to Sears' counsel setting forth the various issues with Sears' discovery responses and failure to produce documents in accordance with Local Rule 37-1.  (Exhibit 5)  Sears' counsel responded to this letter on October 14, 2014 (Exhibit 6), and the parties thereafter met and conferred in-person on October 21, 2014.

On October 27, 2014, Deckers' counsel sent a follow-up letter to Sears' counsel regarding the parties' LR 37-1 meeting and the issues discussed.  (Exhibit 7)  Sears' counsel did not respond to this letter.  It has been nearly a month since counsel for the parties conducted the LR 37-1 meeting, and Sears has not produced *any* documents or any supplemental discovery responses per their agreement to do so.

**B.      Sears' Failure to Produce Responsive Documents in this Action**

At the very least, Sears must be compelled to produce documents in response to Requests to which had agreed to produce documents - **Requests Nos. 1, 9, 10, 26, 27, 30, 31, 32, 39, 40, 42, 59, 60, 65, 68, 69,** and **70**.  Sears also should be compelled to produce documents that identify its actual/target customer base (e.g. demographics, age group, etc.) in response to **Request No. 41**, as agreed upon by Sears.  To the extent it is unable to comply with any of the Requests, Sears must amend and/or supplement its responses to clearly state whether or not it is fully complying with the discovery requests.  [FRCP 34(b)(2)(B)]

**C.      Sears Must Produce Documents Responsive to Requests Nos. 2, 5, 6, 7, 8, 12-25, 28, 29, 33, 34, 35-38, 43-52, 56, 61, 62, 67, and 71**

Sears objected to numerous discovery requests on the grounds that "Disputed Products" were not identified with specificity and so they were purportedly not equipped to respond to said Requests.  However, in addition to identifying Defendants' knock-off products in the Complaint, Deckers had included photos of the "Disputed Products" in the requests themselves, more than adequately identifying the products at issue of which it is currently aware.

Sears' outright refusal to produce any documents on contentions that "Disputed Products" were not identified by style name/no. contrary to the federal rules.  In fact, a request is sufficient if the documents or things to be produced are of a category described with "reasonable particularity" in the request.  [FRCP 34(b)(1)(A)]  The test is whether or not a "respondent of average intelligence would know what items to produce."  [Salisbury v. Hickman, 2013 U.S. Dist. LEXIS 115024, *8 (E.D. Cal. Aug. 14, 2013); Regan-Touhy v. Walgreen Co, 526 F.3d 641, 549-50 (10th Cir. 2008); Kidwiler v. Progressive Paloverde Inc. Co., 192 F.R.D. 193, 202 (N.D.W.V. 2000)] Thus, Sears should have been able to respond to these Requests with the exercise of common sense.

In any event, Deckers has since served Amended Infringement Contentions (Exhibit 8) that sets forth all styles of infringing product by style name and photograph of which it is currently aware.  Thus, Sears should be compelled to produce documents responsive to the above-enumerated Requests with respect to *all* items identified in the Amended Infringement Contentions.

November 19, 2014
Page 3

**D.     Sears Must Produce Documents Relevant to Determination of a Reasonable Royalty**

      **Requests Nos. 45, 47, 48, 49, 50** seek information relevant to the determination of damages on Deckers' design patent claim.  One factor considered under Georgia–Pacific in the determination of a reasonable royalty are "the rates paid by the licensee for the use of other patents *comparable to the patent in suit*." [Georgia–Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)]  In its responses, Sears asserted a series of boilerplate objections to these Requests and refused to produce any documents "*unless and until Deckers narrows the scope of [said Requests]*."

      It is a well-established principle that the party opposing discovery bears the burden of showing why it is not justified.  The party resisting discovery must explain why the discovery is impermissible and has the burden to clarify, explain and support its objections. [Superior Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 217 (C.D.Cal., 2009); Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 655–56 (C.D.Cal., 2005); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.")]

      During the parties LR 37-1 conference, Sears' counsel failed to articulate how these Requests were overly broad or unduly burdensome, and instead agreed only to produce license agreements with respect to the "Disputed Products."  While said documents are indeed probative, Sears must *also* produce license agreements it has entered into with respect to "comparable footwear," especially if there are no license agreements with respect to "Disputed Products."

**E.     Prior Accusations of Infringement Against Sears are Relevant to Establish
       Knowledge, Intent, Absence of Mistake, and Willfulness**

      Sears has refused to provide information/documents regarding prior accusations/lawsuits of intellectual property infringement (**Request Nos. 54 and 55; Interrogatory No. 16**).  The information sought is indeed relevant, as "prior acts may be used to demonstrate knowledge, intent or absence of mistake." [Playboy Enterprises, Inc. v. Chen, 1996 U.S. Dist. LEXIS 21916, *34 (C.D. Cal. Oct. 1, 1997)] Furthermore, once an infringer has been caught, his conduct in future operations should be scrutinized in order to determine his intent. [Plough, Inc. v. Kreis Laboratories, 314 F.2d 635, 639 (9th Cir. 1963). See also, Guru Denim v. L.A. Idol Fashion, Inc., 2012 U.S. Dist. LEXIS 10363, *3 (C.D. Cal., Jan. 25, 2012) ("A party who has once infringed a trademark may be required to suffer a position less advantageous than that of the innocent party.") (citing Wolfard Glassblowing Co. v. Vanbragt, 118 F.3d 1320, 1322 (9th Cir. 1997)]

      In The Mainstreet Collection, Inc. v. Kirkland's Inc., 270 F.R.D. 238, 241 (E.D.N.C., 2010), the Court granted in part motion to compel response to interrogatory requesting disclosure of prior accusations of infringement on the grounds that "multiple successful claims of intellectual property right infringement against Defendants could tend to reveal a pattern to Defendants' behavior that would lend credence to Plaintiff's present claims."  Deckers has agreed to limit these Requests to an identification of lawsuits against Sears involving claims of intellectual property infringement or misappropriation during the past ten years where Sears was either found liable or voluntarily settled any such claim, which is in line with the ruling in Mainstreet.  [Id.]

November 19, 2014
Page 4

**F.      Sears Must Produce Indemnification Agreements With Respect to Disputed Products and Documents Regarding the Negotiation Thereof**

While Sears has agreed to produce the indemnification agreements themselves, (**Request No. 67**), Sears should also produce documents involving the negotiation of said indemnification agreements.  Evidence of indemnification against the deterrent effects that the patent laws would have on would-be infringers can be relevant to show intent to induce infringement or that infringing activities were undertaken willfully. [See Hewlett–Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1470 (Fed.Cir.1990) ("Cases have held that an indemnification agreement will generally not establish an intent to induce infringement, but that such intent can be inferred when the primary purpose is to overcome the deterrent effect that the patent laws have on would-be infringers."); see also Jurgens v. McKasy, 927 F.2d 1552, 1562 (Fed.Cir.1991) (affirming award of increased damages for infringement where, among other things, the infringer continued to sell accused products after obtaining an indemnity agreement); Church & Dwight Co., Inc. v. Abbott Labs., 2008 WL 2565349 *10 (D.N.J. June 24, 2008) (affirming jury's verdict of willful infringement where, among other things, the infringer "sought to 'insure' itself against liability exposure via indemnifications")]

**G.      Sears Must Provide Supplemental Responses to Interrogatories Nos. 1-15, 17**

Similar to the Requests for Production, Sears refused to respond to a number of the Special Interrogatories "*unless and until Deckers identifies the products in dispute*."  (See Responses to **Interrogatories Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12,** and **13**)  As stated above, Sears should be required to respond in full to said Interrogatories as "Disputed Products" are identified in the Amended Infringement Contentions.

**Interrogatory No. 14** requests identification of "all UGG® products analyzed, reviewed, considered, compared and/or copied by SEARS with respect to the design, development, and/or selection of its products" and **Interrogatory No. 15** requests identification "each instance in which the word "UGG" was used to describe and/or identify any product distributed, offered for sale, and/or sold by SEARS."  Sears has agreed to respond to these Interrogatories only with respect to the Disputed Products.  This, however, is an improper limitation of the scope of these Interrogatories, that seek relevant information regarding issues of knowledge, absence of mistake, and willfulness.

To the extent Sears has designed, distributed, or sold UGG knock-offs that do not infringe on the specific Bailey Button Trade Dress/Design Patents or have attempted to copy any UGG® boot designs, this information would still be relevant.  The limitation of said Interrogatories to the specific trade dress/design patents and/or accused products at issue clearly conflicts with Fed. R. Evid. 404(b), which expressly permits the use of evidence of "other" acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident."  [See e.g., Johnson & Johnson Consumer Companies, Inc. v. Aini, 540 F. Supp. 2d 374, 392 (E.D.N.Y. 2008) (where history of trademark infringement actions brought against competitor was admissible in separate trademark infringement action as evidence of, inter alia, intent and knowledge); Mainstreet Collection, 270 F.R.D. at 241 (see discussion above)]

November 19, 2014
Page 5

Accordingly, if Sears has reviewed/considered UGG® boots in the design of *any* of its footwear, regardless of whether or not they infringe on the Bailey Button styles at issue, this is probative of its knowledge of the UGG® brand and its intent to capitalize on the popularity of the UGG® boot designs.  To the extent that Sears has described or defined any of its products with the word "UGG," this supports Deckers' allegations that its infringement of the trade dress/design patents at issue was done intentionally to exploit Deckers' reputation in the marketplace.

Sears has agreed to respond to **Interrogatory No. 17**, which seeks identification of "*any procedures or steps SEARS takes to ensure that its products do not infringe upon the intellectual property of others*," only as it relates to the Disputed Products.  Again, this is an improper limitation of this Interrogatory, which also seeks information relevant to issues of knowledge, absence of mistake, and willfulness.  For example, if Sears in fact does have policies/procedures in place to avoid intellectual property infringement, such evidence would be relevant if such policies/procedures were not followed with respect to the Disputed Products in this case.  If Sears does not have any policies/procedures in place to avoid intellectual property infringement, this would also be probative as it may be relevant to show willful blindness/reckless disregard.

Where Interrogatories Nos. 14, 15, and 17 seek relevant information, the burden should be on Sears to show how and why the scope of these Interrogatories should be narrowed in scope. Sears has failed to do this, and thus should be required to respond in full to said Interrogatories.

Finally, Sears responded to many of the Interrogatories by reference to documents pursuant to FRCP 33(d).  However, Sears has not produced *any* documents in connection with this action, and so reference to documents is simply unresponsive.  In any event, production of documents pursuant to FRCP 33(d) is only appropriate where the information sought may be obtained by examining the responding party's business records and answering the questions would require the responding party to engage in burdensome or expensive research.  [FRCP 33(d); Daiflon, Inc. v. Allied Chem. Corp., 534 F.2d 221, 225 (10th Cir., 1976)]  Sears has not demonstrated the need to exercise FRCP 33(d) in responding to these Interrogatories.  Furthermore, the information requested by these Interrogatories calls for relatively straightforward responses, and thus Sears should respond fully to these Interrogatories.

## H.     Sears has Not Produced a Privilege Log

While Sears has asserted objections based upon attorney-client and/or work-product privilege, no privilege log has been produced.

## I.     Deckers' Requested Relief

Based on the foregoing, Deckers seeks an Order from this Court compelling Sears to respond full to the Special Interrogatories set forth above and produce documents responsive to the above-referenced Requests for Production.  To the extent Sears is unable to locate responsive documents, Sears must be compelled to serve amended/supplemental responses accordingly.

Respectfully Submitted,
/s/ Cindy Chan
Cindy Chan